Rogers <em>against</em> Moore.

In this state, a conveyance, by a tenant for life, of an estate in fee simple, does not operate as a forfeiture of the life estate, nor affect persons seised

of ulterior interests in the property, but simply passes such estate as the grantor had, and could lawfully convey, and is void as to the residue.

THIS was an action of ejectment; tried at *Norwich, March* term, 1836, before *Huntington, J.*

The demanded premises were formerly the property of *James Rogers,* deceased, who, by his last will, duly proved and established, devised the same to his son, *Solomon Rogers,* as follows: "To be to him during his natural life; and at his decease, my will is, that the same shall go to the issue of his body, lawfully begotten, or to be begotten, to be equally divided among them, to be to them, their heirs and assigns forever: or, if he leave no issue, my will is, that the same shall go to, and be equally divided among the issue of my six following children, *viz., James, Stephen, Isaac, Sarah, Elizabeth* and *Hannah,* who shall be born and living at the time of said *Solomon's* decease, to be equally divided among them, to be to them, their heirs and assigns forever." Similar devises of real estate of the testator, were made by him, in his will, to each of his six children, in similar language, substituting the name of *Solomon,* as one of the six children among whose issue, in the event provided for, the real estate so devised to each of such six children, was to be equally divided.

*James Rogers* died prior to *January* 17th, 1818; and *Solomon* then had issue five children, who, with him, by deed of mortgage of that date, conveyed the demanded premises to *Lydia Bulkley,* and her heirs and assigns forever, to secure a debt due to her; such deed containing the usual covenants of seisin and warranty. *Lydia Bulkley* transferred her debt, and conveyed her interest in the mortgaged premises, to *Benjamin Brown,* by deed of release, dated *January* 18th, 1823. Upon his application, a decree of foreclosure was regularly obtained against the mortgagors, in *October,* 1824, limiting the time of redemption to the 1st *Monday* in *April,* 1825. The foreclosure took effect; and *Brown* conveyed his interest in the mortgaged premises to the defendant, by deed of release, dated *April* 5th, 1825.

Before the foreclosure took effect, *Solomon Rogers,* by a second marriage, had issue born, one child, who died in eight or ten months after its birth; and after the foreclosure took effect, he had, by the same marriage, lawful issue born, *viz., Mary*

New-London,
July, 1836.

Rogers
v.
Moore.

and one other child. *Solomon* having died prior to the commencement of this suit, his daughter, *Mary*, brought her action of ejectment, claiming a right to recover, by virtue of her title as above stated.

The defendant claimed, that upon these facts, the plaintiff had no title to the premises; that by virtue of the will, *Solomon* took an estate for life in the premises, with a contingent remainder to his children, and that, by reason of the execution and delivery by him of the mortgage deed of the premises, as an estate in fee simple, prior to the birth of the plaintiff, such contingent remainder was defeated; and prayed the judge so to instruct the jury.

The judge instructed the jury, that upon these facts, the plaintiff had a title to the demanded premises, as tenant in common with the defendant, and had a right to recover in this action, if she had been by him ousted and kept out of the possession; which was submitted to them upon the evidence offered of an actual ouster.

The jury returned a verdict for the plaintiff; and the defendant moved for a new trial for a mis-direction.

*Law* and *Strong*, in support of the motion, contended, 1. That the will of *James Rogers* created in *Solomon Rogers* a life estate only, with a contingent remainder to his issue. *Luddington* v. *Kime*, 1 *Ld. Raym.* 205. *Backhouse* v. *Wells*, 10 *Mod.* 183. 4 *Kent's Com.* 31. *Lynch* v. *Kinne*, cor. *Chapman*, J. in superior court, *New-London* county, *October* term, 1824.

2. That the alienation by *Solomon Rogers*, the tenant for life, as of an estate in fee simple, was a forfeiture of his estate, and thereby the contingent remainder was defeated, and this before the birth of the plaintiff. 1 *Sw. Dig.* 98. *Archer's* case, 1 *Rep.* 66. 4 *Kent's Com.* 246.

An alienation by mortgage is not less within the rule, than by an absolute deed. The legal title is as effectually transferred, in the one case as in the other. At any rate, by the foreclosure, the estate was absolutely transferred.

*Isham* and *Brainard*, contra, contended, 1. That the will of *James Rogers* gave an estate tail general to the children of *Solomon Rogers*.

Rogers
*v.*
Moore.

2. That if it gave a life estate, it was a vested, and not a contingent remainder, in *Solomon Rogers'* children. *Fearne Cont. Rem.* 4. 1 *Sw. Dig.* 97. *Smith* d. *Dormer* v. *Parkhurst,* 3 *Atk.* 138. *Bayley* v. *Bishop,* 9 *Ves.* 6. *Shepherd* v. *Ingram, Ambl.* 448. *Winnington* v. *Foley,* 1 *P. Wms.* 537.

3. That if it is a contingent remainder, this mortgage is not such an alienation as will defeat the remainder. *Runyan* v. *Mersereau,* 11 *Johns. Rep.* 534. *Coles* v. *Coles,* 15 *Johns. Rep.* 319.

4. That if it is a contingent remainder, the children who signed the deed, had no right, and have conveyed nothing. The deed, therefore, conveyed only *Solomon's* life estate; and that was all that the foreclosure could operate upon ; and that does not affect the title of the plaintiff.

5. That if the rule of the *English* common law is such as the defendant claims it to be, and the mortgage deed is to have the same effect as an absolute deed, yet, in this state, that rule has never been adopted, but by our law, a man's deed or grant is good and valid for what he has right to, and void for the rest. *Martin* & ux. v. *Sterling,* 1 *Root* 210. 1 *Sw. Dig.* 98, 9.

HUNTINGTON, J. Upon the facts agreed, for the purpose of the trial of this cause at the circuit, the jury were instructed, that the plaintiff had a title to the demanded premises, as tenant in common with the defendant, and had a right to recover, if she had been, by him, ousted and kept out of possession, which was submitted to them upon the evidence offered of an actual ouster. The general question, before this court, is upon the propriety of this instruction.

The opinion we entertain upon the principal question arising on this record, renders it unnecessary to consider several points which have been argued before us, by counsel. The claim of the defendant, to exclude the plaintiff from any participation in the property in controversy, rests upon the assumption that the tenant for life, by mortgaging in fee, prior to the birth of the plaintiff, forfeited his life estate, and as a consequence of such forfeiture, the remainder was defeated. We are all of opinion that such was *not* the legal operation and effect of the mortgage deed. Whatever the law on this subject is, or has been,

*New-London,*
*July, 1836.*

Rogers
*v.*
Moore.

in *Great-Britain*, we have not adopted the principle, that an alienation by a tenant for life, by feoffment with livery, or by that which is equivalent to it, of a greater estate than he is entitled to, operates as a forfeiture of the life estate, or affects " persons seised of ulterior interests" in the property. The principles on which the *English* law of forfeiture is founded, are as inapplicable to our condition and circumstances, as they are, in the consequences resulting from them, unjust and inequitable. The just and reasonable rule has been established in this state, that a " conveyance," whatever the form of it may be, " by a tenant for life or years, of a greater estate than he possessed, or could lawfully convey, passes only the title and estate which the tenant could lawfully grant." Its operation is confined to the limits of the grantor's right :—it works no forfeiture :—it neither destroys, nor tends to divest the expectant estate in remainder. It would not be difficult to point out the great injustice which would follow from adopting the strict rule of the ancient common law relating to forfeitures of this description ; nor to show how entirely inapplicable it is to the condition and circumstances of the people of this state, and to the policy of our law ; nor to exhibit the superior equity of the doctrine which sustains such alienations, as " innocent conveyances," passing no greater estate than the grantor may lawfully convey. We decline, however, a critical examination of these points, principally, lest it should be inferred, from an elaborate discussion of them, that the judicial tribunals of this state have, at any time, doubted the existence, here, of the rule which has rejected the feudal law of forfeiture by alienation, and refused to give to a conveyance in fee, by a tenant for life, the effect of a feoffment with livery, by such tenant, at common law, of "ransacking the whole estate, and extinguishing every right and power connected with it." It is sufficient to remark, that the doctrine, established in this state, that a conveyance by the tenant for life, of a greater estate than he possesses, or can lawfully convey, operates only upon the interest which he has in the estate, works no forfeiture, and defeats no contingent remainder, has become a rule of property ; and an adherence to it, is essential to the stability of our titles to real estate. We are unwilling to raise any doubts as to the security of these titles, by entering upon a defence of the rule by which they are sustained, although its justice and reasonableness might easily

*New-London,*
*July, 1836.*

Rogers
*v.*
Moore.

be shown. As early as 1790, it was declared, by the superior court, in the case of *Martin* & ux. v. *Sterling*, 1 *Root* 210., that a tenant forfeiting his interest, by granting a greater estate than he hath in the lands, is borrowed from the feudal system; but by the laws of reason and common sense, and by the laws of this state, a man's deed or grant shall be good and valid for so much as he hath right to, and void for the rest. The court do not intimate, that they are stating any *new* rule as the law of this state. They simply declare what it is, and always has been. In conformity, as we believe, with the general understanding of the profession and the public, and supported by the authority of the case cited, it is presumed contingent remainders have often been created, in the full belief that they were not dependent on the will or caprice of the tenant for life; and it is not improbable the titles to many estates depend upon a firm adherence to the rule, as it has always been understood in this state. The sanctity of these titles we are not willing to invade, by introducing, now, for the first time, into our system, an ancient rule of the common law, extremely rigorous and unjust, founded upon feudal principles, which are inapplicable to our situation, not supported by any adjudication of our courts, nor adopted in practice. By rejecting it, we avoid the odious doctrine of forfeiture, continue the life estate in the grantee of the tenant for life, uphold the estates dependent upon it, preserve the symmetry of our law, prevent injustice, and sustain the rights of the respective owners of the property, according to their respective interests in it.

The jury were properly instructed as to the law applicable to the case before them; and consequently, a new trial must be denied.

In this opinion the other Judges concurred.

New trial not to be granted.