Ejectment.

Case 32.

December 7.

Facts of the case.

## Robinson *et al. vs* Miller.

Appeal from the Madison Circuit.

*Assignment of Dower.   Forfeiture thereof.*

Judge Marshall delivered the Opinion of the Court.

In 1810 Bazzell Maxwell died possessed of 200 acres of land, in Madison county, which had been for more than twenty years in the peaceable possession of himself and his father, who had devised it to him. In 1813, the County Court of Madision, by commissioners, assigned to

the widow of B. Maxwell, who intermarried with D. B. Harris, 58 acres, part of the said 200 acres, as her dower in that tract; and in 1815, the residue of the tract was divided, by commissioners of the same Court, between James Maxwell, Malinda Maxwell, and Betsey Maxwell, infant children of said B. Maxwell.

The dowress and her husband, held the land assigned for dower until 1819, when they conveyed the same to one Page, to be held expressly for the life of the dowress. Page afterwards acquired by deed, the interest of Betsey Maxwell, then Betsey Davis, in the whole 200 acres, and also, the interest of James Maxwell in so much of the tract as had been divided between the heirs, by the commissioners; and in each of these deeds, there is a reference to the dower allotted to the widow. The deed from James Maxwell to Page, bears date in 1820.

Page having afterwards died, this tract of land was sold by decree in chancery, on petition of his heirs, and conveyed, without restricting the estate conveyed, according to the nature of his contract, to N. Henderson, who, in April, 1831, conveyed it in fee simple, and with general warranty, to James Barnett, by whom it was devised to J. H. Miller, who retains the possession, the dowress of B. Maxwell being still alive.

In 1826, William Whitlow, the husband of Malinda Maxwell, executed a deed, purporting to be the deed of both, but not so authenticated, as to be the deed of the wife, conveying to William Robinson, one third of the land allotted to the widow for her dower, but showing that as to that, the estate was not to commence until the death of the dowress. In 1832, James Maxwell conveyed all his right in the 200 acres to the same William Robinson, and afterwards, in 1832, this action of ejectment was commenced on the demises of Wm. Robinson, Wm. Whitlow, and James Maxwell, to recover the land which had been allotted to B. Maxwell's widow as her dower in the 200 acres.

There was evidence on the trial conducing to prove that B. Maxwell had stated in his lifetime, that the 200 acres were held by bond on Christopher Irvine for a title, and that no conveyance had been made before Maxwell's

ROBINSON *et al.*
*vs*
MILLER.

death, because of the early death of C. Irvine and long continued minority of his heir. And a deed was read from the 'heir of said C. Irvine to the three heirs of B. Maxwell, dated in 1816, in which a paper purporting to be the bond aforesaid, is incorporated and made the basis of the conveyance, for which there was no other consideration. This deed conveys the title to the three heirs of Maxwell without noticing the widow or her dower.

Other facts of a minute character, not affecting the questions which we are to decide, need not be stated.

Instructions given by the Circuit Court—
Judgment.

The Court, on motion of the plaintiff, instructed the jury that if they believed the evidence on both sides, they should find for the plaintiff; which instruction was afterwards so far modified as to state, that as to Whitlow's interest there could be no recovery on the demise of Robinson, and that as to J. Maxwell's interest there could be no recovery on the demise of Robinson, if at the date of the deed from Maxwell to Robinson, the land was in the adverse possession of the defendant or those under whom he claims. Under these instructions, a verdict and judgment was rendered in favor of the plaintiff for two thirds of the land, from which, the defendant having failed in his motion for a new trial, and having excepted to various opinions of the Circuit Court against him, has appealed to this Court.

Waiving all discrimination between the rights of the several lessors, it is obvious that the instruction to find for the plaintiff cannot be sustained; if upon facts which the jury might have found on the evidence, there was a valid subsisting estate in dower in the land, at the date of the demise or of the action, or in other words, the instruction cannot be sustained unless upon facts, which the jury were bound to find, there was no such valid subsisting estate at either of the times referred to. It is accordingly contended, in support of the instruction and of the judgment: 1st, that there never was such a dower estate in this tract of land, which had been assigned for dower, as would obstruct the entry of the heirs or their alienees, and 2nd, that if there ever was such estate, it was forfeited before the date of the demise, by means of the conveyance in fee simple by the alienees of the dowress, and

by the possession taken and held under those convey-
ances.

The first ground is based upon the assumption that B.
Maxwell had but an equitable title at his death; that con-
sequently, the County Court had no jurisdiction to assign
dower in the land; that the assignment actually made was
therefore of no validity, and that the subsequent convey-
ance of the legal title to Maxwell's heirs, did not help the
dowress as to her right in this invalid allotment.    But
conceding, without however deciding that the evidence
properly before the jury proved conclusively that B. Max-
well's title was equitable only, and conceding that the
allotment of dower by the County Court was an act be-
yond their authority, and as their act, wholly void and un-
obligatory against the heirs: it is nevertheless true, that
B. Maxwell's widow was, by the laws of this State, enti-
tled to dower in the land; that his heirs, or their guardian,
were bound to assign it to her; that they might do this
without the intervention of any Court, by mere act *in
pais*, and that until dower should be assigned, .the widow
had a right, as against the heirs, to remain in possession.
It is also true, and proved beyond question in this case,
that there was an actual assignment of dower, by metes
and bounds, under the void authority of the County Court;
that the dowress acquiesced in this assignment, and limi-
ted her possession and claim to it, and that the heirs also
acquiesced in it for many years, limiting their claims
also to the same boundaries.    It is to be observed too,
that D. B. Harris, the husband of the dowress, became
the guardian of the infant heirs of Maxwell, and as such,
had a division of the residue of the land among them, in
which the dower land was excluded and its boundaries
expressly recognized; and the deeds from Harris and wife,
from Davis and wife, and from James Maxwell to Page,
made before Robinson acquired any interest, and the deed
from Whitlow to Robinson, all, more or less, explicitly
contain the same reference to, and recognition of the
boundary of the dower lot.

Now, taking from the original assignment of dower all
authority and obligation, as the act of the County Court or
its agents, and regarding it merely as the voluntary act of

ROBINSON *et al.*
*vs*
MILLER.

Widow is enti-
tled to dower in
lands in posses-
sion of husband
at his death, and
to which he has
but the equitable
title—
Heirs, or their
guardians,   are
bound to assign
dower to wid-
ow—
They may assign
dower   without
the intervention
of any court.

If dower be as-
signed by county
court, tho' with-
out authority, yet

ROBINSON *et al.*
        *vs*
    MILLER.

if the parties con-
cerned, by long
acquiescence a-
dopt it, it will
bind them and
their alienees as
though original-
ly made by au-
thority.

strangers, who, on their own mere motion, undertook to designate, by metes and bounds, on their own measurement and estimate of value, the land which ought to be assigned to the widow for her dower, it cannot, as we think, be denied or doubted, that the parties interested might afterwards adopt it, and thereby make it as obligatory upon them as if the County Court actually had authority to make it, or as if they themselves had made or authorized it in the first instance; and we think there is as little room to doubt that by the long acquiescence, and express written recognition of the parties, they have thus adopted it; and Robinson is not only bound, by the recognition or exception of the dower in the deed from Whitlow to him, but is also bound by the recognition of the boundary of the dower lot contained in the deed of J. Maxwell to Page, executed ten years before the deed of Maxwell to himself, which latter deed does not expressly convey, nor expressly or impliedly assert an immediate interest in the dower lot, but conveys only the grantor's interest in the 200 acres, which might be satisfied by his reversionary interest in the dower lot; so that there never was, until the bringing of this suit, on the demises of J. Maxwell, and Wm. Whitlow, any assertion of right in opposition to the assignment of dower as actually made: but there was, in the conveyance of Whitlow to Robinson, and in the deeds of Maxwell and Davis and wife to Page, an express recognition of its boundaries.

*Right* to dower
originates with,
and depends on
the law—its *de-
signation* on the
act of the parties
or the interven-
tion of some au-
thorized tribunal,

It is to be recollected, that the right of dower and the right to have it assigned in this tract, originated in, and depended upon the laws, and not on the act or will of the heirs. It was the mere designation of the boundary of the dower land that required either the intervention of some authorized tribunal, or the agency or assent of the heirs; and if writing was necessary, for this purpose, the deeds above referred to furnish sufficient evidence of assent.

Widow is enti-
tled to posses-
sion against the
heir or his ali-
enee until dower
be assigned.

It may be added that no objection is made, and there does not appear to have been any ground for impeaching the allotment of dower, on the ground of inequality or unfairness, and if there had been, as the widow was en-

titled to possession as against the heirs, until her dower was assigned, the action of ejectment would not have been a proper or sustainable remedy in such a case. Nor indeed, in any case where the right of dower is unquestionable, and the ground of the action is that the widow remains in possession without a regular allotment of dower.

The fact that B. Maxwell, instead of having a complete legal title at his death, had only a complete equity, is immaterial, as between the widow and heirs, and could not affect their reciprocal rights and duties in regard to dower. The legal title which was subsequently acquired by the heirs, solely in consideration of the equity which had descended, was just as much subject to the dower right as the equity was, or as the legal title would have been, had it actually descended. The remedy for coercing an assignment of dower in the two cases might be different, but the right and duty of the heirs to make the assignment would be the same in each; and the effect of a recognition by them of an invalid assignment made by others, would be the same in both cases. That there was a suffiicient recognition in this case has already been stated.

It seems therefore, entirely clear to us, that the instruction given by the Circuit Court cannot be sustained, on the ground that there never was such an estate of dower in this land as to obstruct the right of the heirs or their alienees to enter upon it.

Has the dower estate been forfeited, and the right to enter upon the land been thus vested in the heirs? It is contended, in support of the judgment, that such a forfeiture has accrued by the fact that some of those who have successively acquired the dower tract, as remote vendors of the dowress, have conveyed the same, in fee simple, to others, who have entered and held possession under such conveyances, and that the defendant so entered and holds adversely. Conceding again, without deciding that the facts here assumed are conclusively proved, we do not admit the legal consequences contended for. The authorities referred to, as well as others relating to the subject, show that the doctrine that a life estate may be for-

*Dower, or other estate for life, not forfeited by conveyance, by bargain and sale, by which nothing passes but what grantor may lawfully convey. It would in England, by alienation, by feoffment or fine and recovery.*

ROBINSON *et al.*
*vs*
MILLER. •

feited by the alienation in fee of the tenant for life, applies only to alienations by feoffment or by fine or recovery. This is to be understood of the alienation spoken of by *Littleton*, sect. 415, as is manifest, from *Coke's Commentary*, immediately following, and is expressly declared by him in his Commentary upon other sections, page 251, *a.* and 251, *b.* 2, *Thomas' Coke*, 206-7-8-9. *Blackstone* (2, Book 274-5,) also restricts the forfeiture to alienations by feoffment, fine or recovery, and shows that the principal reasons for the doctrine, relate either to the peculiar properties of those conveyances or to incidents of the feudal connection between the lord and the tenant of the land, which do not apply to estates for life in this country. The principal distinction between these modes of conveyance and alienation, by deed of bargain and sale, is that by the latter nothing passes but that which the grantor has, or that which may lawfully pass, and it therefore neither has the effect of divesting the remainder nor, *ipso facto*, of determining the original interest of the tenant by the creation of one that is greater. It is for this reason that the grant, in fee by tenant for life, of an incorporeal hereditament, does not produce a forfeiture, (*Thomas' Coke*, 207.) The conveyance of land, by deed of bargain and sale, stands on the same ground, and does not produce a forfeiture of the life estate, 2 *Leonard's Reports*, 60; 3 *Modern Rep.* 151; 2 *Thomas' Coke*, 115, *Note L.* 3.

Estate for life, not forfeited by tenants claiming or affirming a right to the *fee*, unless such claim be of record in a judicial proceeding.—Deed tho' recorded is mere matter *in pais*.

It is true there is another ground of forfeiture, where the tenant for life claims the fee himself or affirms the reversion to be in another. But such claim or affirmation must be by matter of record; and according to the instances put by Coke, in a judicial proceeding, 2 *Thomas' Coke*, 207-8. A deed, though recorded, is mere matter *in pais*, same page, *Note C.* Whatever therefore, may be the doctrine, with regard to the consequences of an alienation in fee, by a tenant for years or at will, by deed of bargain and sale, and of the disclaimer evidenced by such alienation, we find no authority for determining that such alienation by tenant in dower, or other tenant for life, forfeits the life estate and gives the right of entry to the next in remainder or reversion. And the greater

intimacy, dependence, and subordination, belonging to the relation of landlord and tenant, prevents the application, by analogy, of the doctrine of forfeiture or of disseisin by election, which may exist under that relation to the case of the heir and the dowress, between whom, although there is a privity which imposes mutual obligations, there is not the same dependence and subordination of tenure nor the same continually recurring duties.

We have not thought it necessary to enquire into the effect which might be given to the fact that the persons who seem to have aliened in fee, were not only tenants for the life of the dowress, under her conveyance, but were also joint tenants with two other heirs or their alienees of the immediate reversion, (see 2. *Thomas' Coke, p.* 209, *Note H. and Bredon's case,* 1 *Coke's Rep.* 76.) Nor does the question, whether the alienation of the whole tract, by one of these joint tenants, and the possession of the whole, by the alienee, under the deed, is such an ouster of the other joint tenant as authorizes a recovery in ejectment by them, come up in this case. For the dower estate must be removed, before there is any right of possession in any of the joint tenants as such.

We conclude therefore, that as the evidence conduces to show, 1st. a valid right of dower in the widow, and 2nd. and actual allotment, which however invalid at first, was sufficiently recognized by the heirs, even after they acquired the legal title; and as the facts, on which a forfeiture is claimed, do not, if conclusively proved, produce a forfeiture or give a right of entry to the heirs or their alienees, the instruction to find for the plaintiffs was entirely erroneous.

Wherefore, the judgment is reversed and the cause remanded for a new trial, on principles consistent with this opinion.

*Breck* for appellants: *Turner* for appellee.