BALDWIN C. CARPENTER *v.* ELIZABETH S. DENOON ET AL.

1. The attestation clause to a will executed and probated in a sister state, whereof an authenticated copy has been duly admitted to record in this state, is as follows: " Signed, sealed, and published in presence," the will being signed at the end thereof by the testator and three witnesses. *Held*, in the absence of proof to the contrary, it will be presumed that the testator and witnesses signed the will in the presence of each other.

2. Where an application was made to the proper court, under section 28 of the wills act of 1840, to admit to record an authenticated copy of a will executed and proved in a sister state, it was not necessary to continue the motion to the next term or give notice of such application in a public newspaper, as prescribed in section 30 of the act. The latter section did not apply to wills executed and proved in any of the states or territories of the United States.

3. The neglect of a devisee for three years to cause a known will to be offered or admitted to probate, whereby the devise lapses under the thirty-fourth section of the act of 1840, refers to the original probate, and not to the admission to record of an authenticated copy of a probated will.

4. The provisions of section four of the act of March 20, 1849 (47 Ohio L. 32), did not apply to foreign wills on record in this state at the date of the passage of the act.

5. A will executed and proved in a sister state, and afterward, under the act of 1840, an authenticated copy thereof is duly admitted to record in any county in this state where any part of the property devised is situated, is as valid to vest title in the devisee as a domestic will duly probated.

6. A domestic will, under the act of 1840, when duly probated in any county of this state, vested in the devisee the property therein devised, although such property was situated in another county.

7. A will, executed in conformity with the provisions of the act of 1824, but made and proved in a sister state, might, after the repeal of that act, be admitted to record in this state, under the act of 1840.

8. When an authenticated copy of a foreign will is properly admitted to record in this state, and afterward a copy of such record, under section 26 of the act of 1852, is filed and recorded in another county, the latter record may be given in evidence, in an action for the recovery of lands devised by the will, commenced before the record was made.

9. When lands are devised for life to one person with remainder over in fee to another, the possession of a third person, under the tenant for life, is not adverse, within the meaning of the statutes of limitation, as against the remainderman until a right of entry accrues to him.

10. A deed of conveyance by a tenant for life purporting to convey the title in fee, passes the life estate, but does not forfeit it to the reversioner or remainderman.

ERROR to the Court of Common Pleas of Pickaway county. Reserved in the district court.

The original action was brought by defendants in error against plaintiff in error, on the 9th day of May, 1868, in the Court of Common Pleas of Pickaway county, to recover the possession of a tract of land situate in said county, containing about 142 acres.

The defendant below filed his answer in the action denying title in the plaintiffs, and asserting title in himself.

It is admitted in the pleadings that one Thomas Pemberton, deceased, is the common source of title. The plaintiffs claim title as devisees under the last will and testament of said Thomas Pemberton, and the defendant claims under mesne conveyances from his heirs and by adverse possession for more than twenty-one years.

In the court of common pleas, at the March term, 1872, the cause was submitted to the court upon an agreed statement of facts, and judgment was rendered in favor of plaintiffs.

The following is the agreed statement of facts :

" It is admitted that Thomas Pemberton, who, during his lifetime and at the time of his decease, was a resident of the State of Virginia, was seized in fee simple of the lands described in the petition, and was so seized at the time of his death ; that he was also seized in fee simple of a large number of acres of other lands in the State of Ohio ; that on the 4th day of October, 1828, he made and published his last will and testament, a copy of which is hereto annexed and made a part of this agreement, together with a copy of the proceedings in the proper court of Goochland county, State of Virginia, admitting said will to probate there.

" It is further admitted that the plaintiffs in this action are grandchildren of the said Thomas Pemberton, and the heirs at law of the said Dicey Quarles, who was a daughter of the said Thomas Pemberton and one of the devisees mentioned in his will; that the said Dicey Quarles died

December 30, 1860, leaving the plaintiffs her heirs at law; that the will of the said Thomas Pemberton, who departed this life in October, 1828, was duly probated, according to the laws of Virginia, in Goochland county, Virginia, where the said testator resided at the time of his death, on the 15th day of December, 1828.

" And it is further admitted that a copy of said will and of the proceedings admitting the same to probate was admitted to record in Clinton county, Ohio, on the 4th day of March, 1846; that a part of the testator's lands were situated in said county of Clinton. A copy of the proceedings in the Court of Common Pleas of Clinton county, Ohio, at the March term thereof (1846), is hereto annexed and made a part of this agreement.

" It is further admitted that a copy of the proceedings in Clinton county, Ohio, admitting said will to probate there, and a copy of said will were ordered to be recorded by the Probate Court of Pickaway county, Ohio, on the 31st day of July, 1869, after the commencement of this action; a copy of which proceedings is hereto annexed and made a part of this agreement.

" It is further admitted that, on the 8th day of March, 1834, an amicable partition of the lands of which the said Thomas Pemberton died seized was made among his children, and the lands described in the petition were set off to the said Dicey K. Quarles.

" That on the 7th day of March, 1837, the said Dicey K. Quarles executed a power of attorney authorizing J. S. Watkins to sell her lands, which power was duly recorded in Pickaway county, Ohio, November 7, 1839. A copy of said power of attorney is hereto annexed and made a part of this agreement.

" That on the 18th day of May, 1840, the said Dicey K. Quarles, by her said attorney, for a full and valuable consideration, sold and conveyed the premises in the petition described, to James Allen by a deed of general warranty.

" That on the 11th day of March, 1853, the said Allen,

for a full and valuable consideration, sold and conveyed the said premises to the defendant by a deed of general warranty; that the said Allen and the defendant have been in the quiet and peaceable possession of the premises ever since the 18th day of May, 1840, without any notice of the claims of the plaintiffs.

" It is further agreed that this statement of facts is made for the purposes of this action only, and is not to be used in any other, and that either party may at any time before final judgment in this action, or on proceedings in error in any court, correct any error, misstatement, or omission as to the facts by proper testimony."

The land in controversy was disposed of by Thomas Pemberton in the residuary clause of his will, which reads as follows:

" All the rest and residue of my estate, both real and personal, whatsoever and wheresoever not herein specially devised and bequeathed, I devise and bequeath to my said children, John, Robert, Thomas, Ann, Mary, Dicey, and Maria, and their heirs, to be equally divided between them. . . . .

" That portion of my estate, real and personal, which shall be allotted as the shares of my two daughters, Ann C. Crenshaw and Dicey Quarles, I give and devise to my three sons, John, Robert, and Thomas Pemberton, or the survivors of them and the heirs of the survivors, in trust for my said daughters, Ann and Dicey, to be held for them severally during their lives, to take and receive the rents, issues, hires, and profits, and apply the same severally to the support and maintenance of my said daughter Ann and her children and Dicey and her children; and after the death of my said daughter Ann, the estate held in trust for her I give to her children and their heirs, except her oldest son, Thomas, unless she shall by writing, executed by her in the presence of two or more creditable witnesses, request, direct, and will that he shall take equally with her other children; and after the death of my daughter Dicey Quarles, I give the property devised in trust for her to her

children and their heirs, to be equally divided between them."

The conclusion of the will, its execution and attestation, appears in the form following:

"In witness whereof, I have hereunto set my hand and seal, this 14th day of October, 1828. The word 'my' interlined before signed.

   [SEAL.]          "THOMAS PEMBERTON.

"Signed, sealed and published in presence:

"SAMUEL MILLER,

"T. FLEMING,

"ABNER NASH."

The record of the order of probate from the "proper court," duly certified, with a copy of the will, is as follows:

"At a court held for Goochland county, at the court-house, the 15th day of December, 1828, this writing was presented in court and proved by the oaths of Tarleton Fleming and Abner Nash to be the last will and testament of Thomas Pemberton, deceased, and ordered to be recorded; then, on the motion of John Pemberton, one of the executors named in the last will and testament of Thomas Pemberton, deceased, who made oath thereto, and together with George C. Puckett, Abner Nash, and Archibald Boyce, Jr., his securities, entered into and acknowledged a bond in the penalty of $40,000, conditioned as the law directs, probate of the said will was granted him in our form."

The order made by the Court of Common Pleas of Clinton county, Ohio, at the March term, 1846, admitting an authenticated copy of the will and probate to record in said court, is as follows:

"And it appearing to the satisfaction of the court that said last will and testament of said deceased was fully proved and admitted to record, on the 15th day of December, 1828, agreeably to the laws of said State of Virginia:

"The court do therefore admit the said authenticated copy of the last will and testament of said deceased, together with the certificate thereof, to record in the records of our said court here, agreeably to the provisions of the

statutes of the State of Ohio, in such cases made and pro-vided."

The following is a copy of the record of the probate court of Pickaway county, admitting to record in that court a copy of the will, and probate proceedings:

" This day came the heirs of Thomas Pemberton, formerly of Goochland county, Virginia, deceased, and produced in open court a transcript of the record and proceedings in regard to recording in the Court of Common Pleas of Clin-ton county, Ohio, of a copy of said will duly authenticated, and of the proceedings in regard to the proof of the orig-inal will in Goochland county, Virginia. And they pro-duced a transcript of the proceedings in said Court of Com-mon Pleas of Clinton county, Ohio, in regard to the record, thereof, and asked the court to make a record of the fore-going transcript, which is ordered to be done accordingly.

" *July* 31, 1868."

Upon this agreed statement of facts it is claimed that the court of common pleas erred in rendering judgment for the plaintiffs.

*P. C. Smith*, of *Smith & Hurst*, for plaintiff in error:

I. A will made in a sister state must be recorded in Ohio, before title to land vests in the devisee.   *Wilson's Ex'rs* v. *Tappan*, 6 Ohio, 172; *Lessee of Swazey's Heirs* v. *Blackman*, 8 Ohio, 18; *Bailey* v. *Bailey*, 8 Ohio, 245; 1 Redfield on Wills, 398; 1 Jarman, 1; Story on Conflict of Laws, secs. 424, 426, 474.

Prior to the wills act of 1839 (1 Curwen, 550), however valid and binding a will made in a sister state might be to pass title to property in the state where made, it was wholly void as to property in Ohio, unless made in accordance with our statutes. *Bailey* v. *Bailey*, 8 Ohio, 245; *Meese* v. *Keefe*, 10 Ohio, 362; *Manuel* v. *Manuel*, 13 Ohio St. 468; 17 Ohio St. 181.

Our statute required that a will should be attested and subscribed in the presence of the testator. It nowhere ap-pears that this will was subscribed by these witnesses in the presence of the testator.

II. Notice of the application for admission to probate should have been given by publication for three weeks to all parties interested. This was not done. It was necessary to have been done to give jurisdiction. Hence, the proceedings in Clinton county are utterly valueless as a muniment of title. Wills Act, secs. 28–32, 1 Curwen, 685; *Sheldon* v. *Wright,* 1 Seld. 510; 1 Turn. & Russ. 219; 12 Eng. Ch. 219; *Moore* v. *Starks,* 1 Ohio St. 369; 3 Cow. 59; *Williamson* v. *Berry,* 17 Curtis (U. S. Cond. Rep.), 681; *Borden* v. *Fitch,* 15 Johns. 121; *Biglow* v. *Sterns,* 19 Ib. 39; *Miller* v. *Martin,* Ib. 7; 3 Ohio, 353; *Sheldon* v. *Newton,* 3 Ohio St. 499; 15 Ohio St. 485; 16 Ohio St. 193; *Bloom* v. *Burdick,* 1 Hill, 139; *Benson* v. *Cilley,* 8 Ohio St. 618; 13 Ohio St. 468; Ib. 415; 3 Seld. 431; 2 Kern. 575; 6 Abbott's Pr. 162; 2 Comst. 461; 26 Conn. 273, 3 Comst. 41; 1 Kern. 331; 9 Cow. 227; Cowen & Hill's Notes to Phil. Ev. 987, note 694, pp. 999–1013; Wright, 709; *Briggs* v. *Wardwell,* 10 Mass. 356 and note; *Steamboat Gen. Buell* v. *Long,* 18 Ohio St. 521; *Adams* v. *Jeffries,* 12 Ohio, 253–274; *Smith* v. *Rice,* 11 Mass. 506; *Proctor* v. *Newhall,* 17 Mass. 91; *Paine* v. *Morland,* 15 Ohio, 435; *Miami Ex. Co.* v. *Brown & Looker,* 6 Ohio, 535; 1 Smith's Lead. Cases, 5 Am. ed., top paging 832–834 and p. 843; *Holt et al.* v. *Lamb et al.,* 17 Ohio St. 375.

III. The recording this will in Clinton county being a void act, hence the subsequent recording of the proceedings had in Clinton county among the records of wills in the probate judge's office of Pickaway county, has no sort of validity.

The admission to record in this state of a will made in a sister state, is equivalent to probating a will. Act of March 28, 1849, sec. 4 (2 Curwen, 1478); *Wilson* v. *Tappan,* 6 Ohio, 172.

The existence of this will was known to and was under the control of these devisees, yet it was not probated in Ohio for more than seventeen years after the death of the testator, and for more than three years after the passage of this law, though the devisees knew of its existence during all that time and could have controlled the same.

Its probate and record after the expiration of the three years does not affect the title of the heir to lands in Ohio, as "no lands, tenements, or hereditaments shall pass to any devisee in a will, . . . unless, within that time (three years), he shall cause the same to be offered for or admitted to probate." Wills Act of 1840, sec. 34; *Nowler* v. *Coit*, 1 Ohio, 519; *Wells* v. *Cowper*, 2 Ohio, 124; 2 Redfield on Wills, 56; *Robertson* v. *Barbour*, 6 Mon. 523; *Sneed* v. *Ewing*, 5 Marsh. 460; *Evans* v. *Anderson*, 15 Ohio St. 326; *Jennings* v. *Jennings*, 21 Ohio St. 79; sec. 33 Wills Act, 2 Curwen, 689; *Woodbridge* v. *Banning*, 14 Ohio St. 331; *Jones* v. *Robinson*, 17 Ohio St. 179; 4 Ohio St. 386.

IV. The act of March 29, 1849, is a complete protection to the defendant (2 Curwen, 1478). 17 Ohio St. 183; 3 Pet. 289; Sedgwick Stat. and Con. Law, 659–663; *Cochran* v. *Taylor*, 13 Ohio St. 387; *Moose* v. *Gold*, 1 Kern. 287.

V. The title to the land vested in the heir.

At the death of the ancestor, lands in Ohio became vested *eo instanti* in the heir, subject, however, to be divested upon the production, probate, and record of the will of such ancestor. *Woodbridge* v. *Banning*, 14 Ohio St. 331; 17 Ohio St. 171.

A vested right is a thing that a man has; that can be levied on and sold by an officer of the law, or that can be sold by an order of a proper court.

Until a domestic will has been probated or a foreign will has been placed on record, the legatee under such will has no rights whatever.

A mere expectation of property in the future is not a vested right. Cooley, 359. The right to take property by taking the necessary steps, or performing the necessary conditions, is not a vested right. The right given by our statutes to put a foreign will on record is a mere statutory privilege, and not in any sense of the term a vested right, for a statutory privilege is not a vested right. Cooley, 383.

There must be an unconditional, fixed right of enjoyment, either present or future, before it could be called a vested right. 4 Kent, 202; Burrell's Law Dictionary.

Apply these tests to the case at bar, and the plaintiffs have no standing in court. This land never did vest in the devisees of Thomas Pemberton, the plaintiffs herein.

VI. It is a general rule that if a person have an interest less than an absolute estate of inheritance, and he attempt to convey a larger estate than he himself has, he forfeits his own interests by such assumption of greater interest than he really has.

If a tenant for life or years convey an estate in fee, the person in remainder may immediately take advantage of such forfeiture and instantly take possession, as if the particular estate has determined by efflux of time. 2 Black. Com. 174, 175; 1 Chitty's Gen. Prac. 243; 1 Wash. Real Property, 92.

The estate of the tenant for life being forfeited, the right of action accrues to the remainderman.

*Henry F. Page,* for defendant in error:

The will in this case was admitted to probate under the 28th section of the act relating to wills, passed March 23, 1840 (1 Curw. 685). This was regular and proper, and gave validity to the will. This section governs and applies to wills executed according to the laws of sister states and territories of the United States. Wilcox's Forms & Pr. 1848, p. 529; 2 Swan's Pr. & Pr. 1258; *Jones* v. *Robinson,* 17 Ohio St. 172; *Manuel* v. *Manuel,* 13 Ohio St. 466.

At the time the will of Thomas Pemberton was executed, the act of February 26, 1824, relating to wills (2 Chase, 1306, sec. 12), was in force, and it authorized copies of wills *proved* according to the laws of any state or territory of the United States to be admitted to record.

At the time this will was actually admitted to record, the act of March 23, 1840, section 28, above referred to, authorized wills *executed and proved according* to the laws of *any state* or territory of the United States to be admitted to record. It is not necessary, under the act of 1840, that a will executed in a sister state should be executed according to the laws of Ohio.

Under the act of 1824 (2 Chase, 1305), and the act of 1831 (3 Chase, 1785), the will was required to be *executed* according to the laws of this state, though they might be made in another state. " A different consequence followed the statute of 1805, which rendered valid such foreign wills executed after the laws of the place where made. So the present statute of 1840 gives the same validity to any such wills as are executed in any state or territory in the United States." *Meese* v. *Keefe*, 10 Ohio, 364; *Baily* v. *Baily*, 8 Ohio, 239; *Jones* v. *Robinson*, 17 Ohio St. 181.

But I assert that the will of Thomas Pemberton was, in all respects, executed according to the laws of Ohio, whether we test it by the act of 1805, or of 1824, or of 1831, or 1840, or 1852. There is nothing in any of those acts which requires anything as to the execution of a will which is not found in the will of Thomas Pemberton. It was signed by the testator at the end thereof, in the presence of three witnesses, and such signing was duly attested by them. What more was ever required by any statute of this state in regard to wills?

It is stated in the attestation clause that this will was " signed, sealed, and published in presence." This means, by fair intendment, that the testator signed the will in presence of the witnesses, and that the witnesses signed the will in his presence. A will is valid without any attestation clause whatever. *Pollock* v. *Glassell*, 2 Gratt. 439; 1 Redfield on Wills, 238, 241, 243; *White* v. *Bryan*, 5 Eng. L. Eq. 579; *Frye's Will*, 2 R. I. 88; *Thomas in re*, 2 Jur. N. S. 104; *Dean* v. *Dean*, 27 Vt. 746; *Croft* v. *Pawlet*, 2 Strange, 1109; *Hand* v. *James*, Comyn, 531; *Vincent* v. *Soder*, 5 Exch. 683; *Burdett* v. *Spillsburg*, 6 M. & G. 386; *Ladd* v. *Ladd*, 4 How. (U. S.) 30–40; *Nickerson* v. *Buck*, 12 Cush. 342; *Eliot* v. *Eliot*, 10 Allen, 358; *Ela* v. *Edwards*, 16 Gray, 91.

The judgment of a probate court, admitting a will to probate, is a judicial act and can not be impeached collaterally. 2 Washburn on R. Prop. 684; 1 Greenl. Ev.,

sec. 518; *Baily* v. *Baily*, 8 Ohio, 239; *Swazy* v. *Blackburn*, 8 Ohio, 19; *Lovett* v. *Mathews*, 24 Penn. St. 330.

The plaintiff in error claims the bar of the statute of limitations. Section 2 of the act of March 7, 1851, 2 Curw. 1660.

This statute was passed twenty-three years after the death of the testator, and after the probate of the will in Virginia.

It is a principle of universal jurisprudence that laws, civil and criminal, must be prospective, and should not operate retrospectively except upon the clearest expression of the legislative intention to that effect.

The leading American case on this subject is *Dash* v. *Van Keck*, 7 Johns. 477. See also *The People* v. *Columbia*, 43 N. Y. 135; Sedgwick on C. & S. Law, 195, 196; 1 Redfield on Wills, 413, sec. 30; Ib. 398, 406; *Jones* v. *Robinson*, 17 Ohio St. 180; *Hall* v. *Ashley*, 9 Ohio, 96; 10 Ohio, 391.

But if the statute did apply in express terms to past cases, without allowing the party a reasonable time to assert his rights, it would be unconstitutional and void. Angell on Limitations, 17, sec. 22; Cooley on Con. Lim. 366; *Kenyon* v. *Steward*, 44 Penn. St. 180.

It is further claimed by the plaintiff in error that Mrs. Quarles forfeited her life estate by undertaking to convey a fee simple.

It is sufficient to say that this doctrine of the English common law is unknown in this country, and the more just principle prevails, that the conveyance of the tenant operates only on the interest which he possesses, and does not affect the remainder. 5 Ohio, 30; 4 Kent, 81, 82, 424; 3 Dallas, 486.

Besides, how can a *stranger and wrongdoer* take advantage of a forfeiture?

The right of forfeiture is an inchoate right, and must be decreed by a court. *Johnson* v. *Petit*, 1 Cin. Sup. Ct. 25.

It is further urged by the plaintiff in error that this will was withheld from *probate* for three years by a devisee who

knew of its existence, and had the same in his power to control.   Swan's Stat., 1841, p. 997, sec. 34.

It is not true that this will was withheld from *probate.* The evidence shows that Pemberton died in October, 1828, and that his will was admitted to *probate* in December of that year.   If the plaintiff in error alludes to the fact that this will was not admitted to *record* in Ohio until 1846, it is a sufficient answer to say that the 34th section of the act does not require a will which has been admitted to probate to be admitted to record in Ohio within three years.   The admission of a will to probate in the place of the domicile of the testator gives it all the publicity that is required.

The admission of a will to probate is one thing; its admission to record is another.

A foreign will is admitted to record so as to permit a certified copy to be given in evidence, when it would be difficult or impossible to produce the original.   9 Ohio, 99; 17 Ohio St. 180; 8 Ohio, 245.

McIlvaine, J.   The property in controversy being situate in this state, it is conceded that the rights of the plaintiffs below, who claim under the will of Thomas Pemberton, must be determined under the laws of this state and not by the laws of Virginia, where the will was made.

It is also conceded that the wills act of 1824 (2 Chase, 1305), which was in force at the death of the testator, required that wills disposing of property in this state, but executed and proved in a sister state, should be executed in conformity with the statute of this state.   *Bailey* v. *Bailey,* 8 Ohio, 245; 17 Ohio St. 181.

1. The first objection to the judgment below, made by the plaintiff in error, is that the record does not show that the will of Thomas Pemberton was attested and subscribed in the presence of the testator by two or more witnesses who saw him subscribe or heard him acknowlege the same, as required by the second section of that act.   The point made is, that notwithstanding anything in the record, the

witnesses to the will may have subscribed it elsewhere than in the presence of the testator.

It is true that it is not stated that the witnesses subscribed the will in the presence of the testator, or that they saw him subscribe or acknowledge the same, either in the record of the probate in Virginia, or in the order admitting it to record in Clinton or Pickaway county, or in the agreed statement of facts. The attestation clause, however, on the face of the will, is in these words : " Signed, sealed, and published *in presence.*" And the record of probate shows that the writing was proved by the oaths of Tarleton Fleming and Abner Nash, two of the subscribing witnesses, to be the last will and testament of Thomas Pemberton, deceased. The plain import of this attestation clause is, that the testator and the witnesses signed the instrument in the presence of each other ; and, independent of the record of probate, it affords a presumption that all the signatures were affixed at the same time and place. Where the execution of an instrument purports to have been attested by a witness, its execution is proved by showing the genuineness of the signature of the witness, although there be no attestation clause. The presumption in such case is, that the witness saw the maker sign or acknowledge it. And there is no more reason for such presumption than there is for presuming that the attesting witness signed the instrument at the same time and place, and in the presence of the maker. In either case the presumption is based upon the probability of the fact, arising from the known and usual mode in which such things are done.

We think, therefore, that this objection is not well taken, and in this conclusion we are supported by authorities. 12 Cush. 342; 10 Allen, 358 ; 2 Strange, 1109 ; 2 Grattan, 439 ; 1 Redfield on Wills, 243.

2. The next objection is that the record of the will and probate in Clinton county was irregular, unauthorized, null and void. The point made is that the Court of Common Pleas of Clinton county, in matters testamentary, was a court of special and limited jurisdiction, and as such had

no jurisdiction to allow and admit the will to record at the term when it was first produced, and " without a continuance of the motion to the next term and notice of the application in a public newspaper," as provided in section thirty of the wills act of 1840, which was then, to wit, March 4, 1846, in force.

This objection is not well taken, for the reason that the provisions of that section relate solely to wills " executed, proved, and allowed in any country other than the United States and territories thereof." The proceeding in the Clinton county court was had under section twenty-eight of that act, which relates to wills executed in our sister states and territories of the United States, and does not require either a continuance of the motion or the giving of notice of the application for the admission of such wills to record. The proceeding to admit to record in this state a copy of a will of this class, is not, under this statute, adversary in its character. Nor can the proceeding be objected to because it is not adversary. It was clearly within the power of the legislature to have made foreign wills effectual to pass title to property in this state without requiring any record thereof in this state or elsewhere. And therefore it was within the discretion of the legislature to impose or not to impose conditions upon the admission of such wills to record within the state.

3. In stating his objections to the record of the will in Pickaway county, made in 1869, the plaintiff in error claims that the plaintiffs below were concluded by the provisions of section thirty-four of the act of 1840, which provisions were re-enacted in the thirty-second section of the act of 1852.

These provisions are as follows: " No lands, tenements, or hereditaments shall pass to any devisee in a will, who shall know of the existence thereof, and shall have the same in his power to control, for the term of three years, unless within that time he shall cause the same to be offered for or admitted to probate; and by such neglect, the estate de-

vised to such devisee shall descend to the heirs of the testator."

Under these provisions, a devise lapses by neglect to cause a known will to be offered for or admitted to probate, but not for neglect in causing a copy of a probated will to be recorded in the county where the devised property may be situated.

The plaintiffs below were not within these provisions for two reasons: 1. The will was offered for and admitted to probate in the court having jurisdiction in the matter within three years from the death of the testator. 2. It is not shown that the plaintiffs below had knowledge of the existence of the will, and had the same in their power to control, for a term of three years before the record thereof was made in Pickaway county.

4. It is next claimed that the title of the defendant below is protected by the act of March 20, 1849 (47 Ohio L. 32), the 4th section of which provides as follows :

" The title of any purchaser of any lands situated in this state derived from the heirs of any person not a resident of this state at the time of his death, shall not be defeated by the production of the will of such decedent, unless such will shall be admitted to probate and record in the county where the land shall be situated, within two years from the death of the testator."

The policy of protecting purchasers from the heirs of non-residents against an unrecorded will, thus inaugurated in 1849, has been continued with some modifications. Thus, the time limited for admitting foreign wills to record in the county where the land devised was situated, under the act of March 17, 1851, commenced running from the date of the probate of the will. And again, by the act of May 3, 1852, section 52, which is still in force, the title of the devisee prevails over that of the purchaser from the heir, if the will be offered for record *in the state* within four years from final probate. But all acquired rights were unaffected by the modifications.

Now, it is claimed by counsel for defendants in errror

that the provisions referred to, in each of these statutes, were intended to apply only to wills executed subsequent to the passage of the act; and further, if otherwise intended, they can not operate constitutionally upon wills executed previous to the enactment. We do not fully concur in either of these views. It is true, the terms "shall be admitted," etc., relate only to a future event; but the event referred to is the admission of the will to record, and not its execution. While, therefore, these enactments were not intended to affect foreign wills already on record in this state, and under which the rights of devisees had vested, although such wills were admitted to record after a period from the death of the testator, or the final probate of the will, longer than that named in the statutes, they were nevertheless intended to operate as to wills previously executed but not then of record in this state. Such operation is not obnoxious to the objection that vested rights are overthrown; for at no time in the history of this state, did rights, under a foreign will, vest in the devisee until such will was admitted to record in this state, although, upon record being made, the will, by relation, operated as from the death of the testator.

The true intent of these enactments was, and their effect is, to protect a *bona fide* purchaser from the heirs of the testator, under the circumstances named, against the claims of devisees, whether the will afterward produced was executed before or after the date of the statutes respectively; but no protection for such purchaser was intended as against the claim of devisees under a will already on record in this state in pursuance of law.

It is therefore clear that the plaintiffs below were not affected by any of these enactments, as the will under which they claim had been admitted to record in this state before the passage of the act of 1849.

5. This brings us to consider the effect of the admission of this will to record in 1846, in Clinton county, where a part of the lands disposed of by the will was situated.

This record was made in conformity with the provisions

of section 28 of the wills act of 1840, which reads as follows : " Authenticated copies of wills executed and proved according to the laws of any state or territory of the United States relative to any property in this state, may be admitted to record in the court of common pleas *of any county in this state where any part of such property may be situated;* and such authenticated copies so recorded shall have the same validity in the law as wills made in this state in conformity with the laws thereof, are declared to have."

The general policy here declared was not inaugurated by this section. Long before the act of 1824, foreign wills, under certain restrictions, were made effectual to pass property in this state, and such policy has never been interrupted. The repeal of one statute on the subject has been simultaneous with the enactment of another declaring the same general policy.

The question then arises, what validity in law would this will have had, if it had been a will made in this state in conformity to the laws thereof, and probated in Clinton county in the year 1846 ?

The first section of the wills act of 1840 provided that any person, etc., having an interest or estate in lands, etc., may give and devise the same to any person by last will and testament, etc. The 21st section provided that, if no person interested shall, within two years after probate had, appear and contest the validity of the will, the probate shall be forever binding, etc.

Upon the probate of a domestic will, the title of the devisee becomes vested immediately, and, by relation, as of the date of the death of the testator, whether the lands devised be situate in the county wherein the will is probated or in another county of the state.

It is true that provision is made for recording a copy of the will and the order of probate in other counties where lands devised by the will are situate; but the recording in such other counties is not made a condition upon which the estate of the devisee vests, nor does the failure to record

such copy and order of probate in any case defeat the title of the devisee.

The only cause for which the statute defeats the estate of a devisee under a domestic will, is his own neglect to offer it for probate within three years after knowledge of its existence, as prescribed in section 34, as above stated.

It follows, therefore, that the title of the plaintiffs below, which became absolute in 1846, upon the admission of the will to record in Clinton county, has not been defeated by the act of 1849 or its subsequent modifications.

6. It is claimed, however, as we understand counsel for plaintiff in error, that a record in this state of an authenticated copy of this will could only be made in conformity to the act of 1824, which was in force at the death of the testator; and that under that statute (sec. 12), a foreign will operated as a valid disposition of property situated in the county wherein the authenticated copy was admitted to record, and not of property situated elsewhere.

The act of 1824 had been repealed and the act of 1840 was in force when the record was made in Clinton county, and we think it is quite clear that the statute in force when the record was made, and not the statute in force when the will was executed, controls the effect to be given to the record of an authenticated copy of a foreign will.

It only remains, therefore, to inquire whether the act of 1840 authorized the recording of an authenticated copy of a foreign will executed and proved before its passage.

Section 28 of this act clearly authorizes such record to be made without regard to the time when the will was made or proved; and declares that when such record is made in any county in this state wherein any part of the property disposed of in the will shall be situated, such authenticated copy shall have the same validity in law as wills made in this state in conformity with the laws thereof.

7. Was the record in the probate court of Pickaway county, made after the commencement of the original action, admissible in evidence in support of the plaintiffs' title?

The making of such record was not expressly authorized

by statute until the passage of the act of 1852. By the 26th section of that act, it is provided that when an authenticated copy of a will, executed and proved according to the laws of a sister state, " *has been* or shall hereafter be admitted to record in the probate court of any county in this state where any part of such" (devised) " property may be situated, a copy of such recorded will, with a copy of the order to record the same annexed thereto, certified by the probate judge under the seal of his court, may be filed and recorded in the office of the probate judge of any other county in this state where any part of such property is situated, and it shall be as effectual in all cases as the authenticated copy of said will would be, if proved and admitted to record by the court."

This *provision* does not create or vest in the devisees under such will any estate or right of property; it merely provides an instrument of evidence whereby pre-existing rights may be established; and it matters not whether the record so made and offered in evidence was made before or after the action, in which it is offered, was commenced. *Poole* v. *Fleeger*, 11 Pet. 185.

8. There remains to be disposed of certain questions arising under the statute of limitations, which deserve a brief consideration.

The right of possession of the estate in remainder, created and vested in the plaintiffs below, under their grandfather's will, did not accrue to them until the death of their mother, Dicey K. Quarles. Her death took place in the year 1860, so that the statutory period of limitations of twenty-one years had not elapsed from the death of Mrs. Quarles until the original action was commenced in 1868.

It is agreed, however, that the defendant below and his grantor, Allen, " have been in the quiet and peaceable possession of the premises ever since the 18th day of May, 1840, without any notice of the claims of the plaintiffs." We understand " the quiet and peaceable possession " of the defendant and his grantor to have been " an actual " possession under a claim of absolute ownership.

Upon these facts it is claimed: 1. That the possession of the defendant and his predecessor, Allen, was adverse to the plaintiffs, and had ripened into a perfect title, whether right of entry had accrued to them or not, more than twenty-one years before the action was commenced. 2. If the time of the statute did not commence to run against the plaintiffs before a right of entry had accrued, it is claimed such right of entry accrued to them on the 18th of May, 1840.

1. In our opinion the statute did not commence running against the plaintiffs until a right of entry accrued to them. If the plaintiffs, and those from whom they derived title, failed to bring their action against the defendant within twenty-one years from the time an action might have been prosecuted against the defendant or his grantor, the defendant's title under the statute is perfect, otherwise it is not.

The plaintiffs did not derive their title from Mrs. Quarles or from her trustees, but did derive it, as purchasers, directly from their grandfather. They had no interest in the life estate, which preceded their estate in remainder, and no control over the premises during its continuance, and therefore the owner or owners of the life estate could not, in the nature of things, dispossess them or hold adversely to them during the continuance of the life estate, within the meaning of the statute of limitations. 17 Ohio St. 374.

2. The theory upon which it is claimed that a right of entry accrued to the plaintiffs on the 18th of May, 1840, instead of the date of the death of Mrs. Quarles, is that the life estate of Mrs. Quarles was forfeited by her deed in fee simple to Allen of that date, and thereupon the right to enter accrued immediately to the remaindermen.

Several answers may be made to this claim:

1. This doctrine of the common law, which had its origin and reason in the fendal system, has never, as far as we know, been recognized in this state, nor do we think there is any good reason for maintaining it under our system. 4 Kent Com. 83, 84; 3 Dallas, 486; 1 B. Mon. 88; 11 Conn. 553; 40 Maine, 528.

2. This claim assumes that Mrs. Quarles was in her estate under the will of the father and not as heir, but it overlooks the fact that the will vested this life estate in trustees for her benefit, so that Mrs. Quarles could not convey even the life estate so as to defeat the estate of the trustees.

3. The defendant having fully enjoyed the life estate under the conveyance, can not now insist on the forfeiture to the prejudice of the remaindermen.

We find no error in this record; therefore the judgment below must be affirmed.