Johnson, J.
This deed was dated May 1, 1818, and, upon its face, was signed and sealed by all the grantors except Mrs. Dudley, though her name was in the granting clause, and there was a blank space for her name, with a scroll seal opposite. It was, however, acknowledged by her, June 20,1820, in Kentucky, before a single justice, whose certifícate has the same defects as *586 in Dengenhart’s case. August '20, 1820, it was duly acknowledged by her husband and the other grantors in proper form.
I. The act of 1805 (1 Chase, 484) was in force May 1, 1818, when this deed was signed and sealed by all the parties except Mrs. Dudley, as the act of 1818 (2 Chase, 1041), which repealed it, took effect 11 from and after ” May 1,1818. (2 Chase, 1043.)
As the act of 1820 (2 Chase, 1139), which repealed the act of 1818, took effect “from and after” June 1, 1820, it was in force when the deed was acknowledged.
II. Its validity as a conveyance of the title of Mrs. Dudley must therefore be determined by the act of 1820, as she neither signed, sealed or delivered the instrument while either the act of 1805 or of 1818 was in force.
In Dengenhart’s case we have held that, under the act of 1805, a deed which she jointly with her husband signed, sealed and delivered was ineffectual to pass her title by reason of a defective acknowledgment. A fortiori, this is so, under the provisions of the act of 1820, where the same defect exists in the acknowledgment, and where she did not join in signing and sealing the instrument.
III. Upon the facts stated in Dengenhart’s case, and under the act of 1805, it was held, that the Park deed was within the curative provisions of the act of 1857, being a defectively executed deed of husband and wife; and the same question now arises : is the Broadwell deed curable under the same statute ? We think not, for the reason that it is essential, under the act of 1820, to the wife’s capacity to make a valid conveyance of land, that there be a joint execution of the deed by husband and wife; by which I mean that it should be signed, sealed and acknowledged by both in the presence of the subscribing witnesses, and also acknowledged before an officer named, who shall in addition take the separate acknowledgment of the wife. Where the wife has not signed, sealed or acknowledged the deed in the presence of the witnesses, though her husband has done so, and where she lias not united with him in the acknowledgment before the officer, she has not had that protection by the counsel and advice of the husband -which is *587 essential to her capacity to convey. Miller v. Hine, 13 Ohio St. 565.
For aught that appears,' or that we are authorized to presume, she may have omitted to sign, seal and deliver this deed, because of the counsel and advice of her husband. It was in no sense her act and deed until signed, sealed and acknowledged by her jointly with her husbaud in the presence of the subscribing witnesses. The subsequent separate examination by her, though it may be in due form, followed by the acknowledgment of the husband, could not make it her deed, or the deed of “ husband and wife ” under the act of 1857.
In equity, and as against persons sui juris, the court had, independently of the statute, the power to compel the specific performance of contracts to convey land whenever it was just and equitable, and this remedy included relief against errors, omissions and mistakes in deeds and other conveyances, whereby the intention of the parties was defeated. This remedy did not exist as against married women. Purcell v. Goshorn, 17 Ohio, 105. The act of 1857 expressly extended this chancery power over married women, in case of “ deeds or other conveyances of husband and wife,” but not to her other contract obligations. Under this act, equity is as powerless to relieve against a married woman’s mistakes or to compel her to perform her general contracts as it ever was, except only as to her deeds and other conveyances intended to convey or incumber her lands or the right of dower in her husband’s lands. Hence it follows that it is not enough to show a case for relief, against a person not under the disabilities of coverture, to bring it within the statute.
As against a married woman, it must appear, not only that she had contracted to convey, and that it is just and equitable she should be compelled to do so, but that she had intended to do so, but had failed to make a valid deed, by reason of some omission, error- or mistake. In short, equity will relieve against her defectively-executed deed, when she had capacity to make-it, but will not compel her to make a deed which she has never attempted to make.
Neither does this general powder exist under the act of 1859, *588 for that, though broader in its terms than the act of 1857, extends only to “ instruments in writing,” or in “ a proceeding,” and. if this deed is not her deed, because never signed and sealed by her, it cannot be her “ instrument in wilting ” for the same reason. Whether the act of 1859 or the revision thereof, as in force when this case was tried, as it now stands, extends to instruments in writing by married women, we need not determine. It is sufficient for this case to say, that when it appears that she did net sign and seal the instrument, as the statute requires, nor attempt to do so, the court has no power to compel her to execute her contract to convey, however strongly the equity of the case may appeal for relief. This power extends only to the case of deeds or other conveyances which she has defectively executed. The acknowledgment only by her did not make it her deed, because she could only acknowledge when she had jointly with her husband signed and sealed the same as the statute authorizes.
III. The conclusion reached entitles the plaintiffs below to recover, unless barred lay the statute of limitations.
Dudley and wife had issue, Ethelbert L. Dudley, bom about 1819, and subsequently three other children.
The deed was executed in 1820, and possession was then delivered thereunder. Mrs. Dudley died in 1834, and the husband in 1875. If his estate by the curtesy passed to Broadwell in 1820, and he and those claiming under him could hold during his life, then this action is not barred. If, however, there was a right of entry to Mrs. Dudley in 1820, or to her heirs at her death in 1834, then it was barred.
We have then seizin in fee by Martha' Catharine Ludlow in 1804, marriage in 1816, birth of issue in 1819, conveyance in fee by the husband in 1820, death of the wife in 1834, leaving heirs, death of the husband in 1875, and ejectment by the heirs iu 1877. By the marriage the husband became seized, in right of his wife, during their joint lives. By the birth of issue in 1819, his curtesy initiate became vested, and he had a life estate if he survived her, in his own right.
There was no defect in this deed as to the husband. It was *589 duly executed and acknowledged by him. It conveyed to the purchaser all his interest and estate.
This estate was a vested freehold during the joint lives, with an estate for life as tenant by the curtesy, in case he survived her. The purchaser entered into possession under this conveyance, and although it was ineffectual to transfer the wife’s estate in the fee, which was subject to this freehold of her.husband, its legal effect was to invest the purchaser with all the husband’s title.
Neither the wife during coverture nor her heirs after her death had, as against the vendee, a right of entry, for he held in right of the husband during the continuance of his estate. Canby v. Porter, 12 Ohio, 80 ; Lessee of Thompson v. Green, 4 Ohio St. 217 ; Clarke v. Clark, 20 Ohio St. 128 ; Denny v. McCabe, 35 Ohio St. 578; Jackson v. Johnson, 5 Cowen, 74; Lessee of Borland v. Marshall, 2 Ohio St. 308 ; Gillespie v. Worford, 2 Coldw. 641; King v. Nutall, 7 Baxter, 226; Vanarsdall v. Fauntelroy, 7 B. Mon. 401; Carpenter v. Denoon, 29 Ohio St. 398.
But it is claimed that by this conveyance by Dudley of the fee, when he only had a freehold for life, subject to the contingency of his wife surviving him, and by putting Broadwell in possession, he forfeited his estate, and that the possession by Broadwell was a disseizin, and worked a forfeiture of his particular estate, so that a right of entry at .once vested in the wife, or if this was not so it vested in the heirs at her death.
Such was the law of England in feudal times, where a tenant for life made a feoffment. This was based upon the feudal notion that by so doing he had renounced the feudal connection between him and 1ns lord, and the estate in remainder or reversion having been divested by the wrongful transfer to a stranger by livery of seizin, the remainder-man or reversioner might at once enter. '
But this rule only applied to feoffments with livery of seizin which amounted to a disseizin of the estate in remainder or reversion; but this rule did not pertain -where the conveyance was by bargain and sale, or any form of deed under the statute of uses, which was not accomplished by actual transfer of *590 possession. Though the deed was in form a fee, it did not convey any more than the grantor had to part with. As this did not disturb the seizin of the reversioner or remainder-man, it did not work a forfeiture. 1 Washb. on Real Prop, ch. 5, § 1, par. 14, 15 ; 1 Cruise Dig. 109.
This common law doctrine of forfeiture, which had its origin in the feudal system, has never been recognized in this state. Carpenter v. Denoon, 29 Ohio St. 398.
Hence, we may say of Mrs. Dudley and her heirs, as was said in that case:
“ They had no interest in the life estate which preceded their estate in remainder, and no control over the premises during its continuance, and, therefore, the owner or owners of the life estate could not, in the nature of things, dispossess them," or hold adversely to them during the continuance of the life estate, within the meaning of the statute of limitations.”

Judgment affirmed.