## EXECUTION OF WILL.

Probate Court of Clark County.

IN THE MATTER OF THE WILL OF JOSEPH O. LEFFEL, DECEASED.

Decided, July, 1909.

*Wills—Signature of Testator Attached in Absence of Subscribing Witnesses —Sections 5916 and 5929.*

1. While it is probably necessary as the law now stands that a testator who signs his will out of the presence of the attesting witnesses shall acknowledge the signature to be his signature *to his will*, it is not unlikely that when the question is squarely presented to the Supreme Court the case of *Kyle* v. *Feuchter* will be so distinguished that the acknowledgment will not be required on the part of the testator of the paper *as his will*, but merely the acknowledgment of his signature, or an acknowledgment of the paper as an instrument signed by him.

2. But the mere failure of a witness to hear the testator designate the signature to the paper in hand as his signature to "his will" is not sufficient to defeat the will where at its probate other witnesses present at its execution testified that the signature to the instrument was acknowledged by the testator to be his signature to his will.

*E. S. Houck,* for contestants.
*J. E. Bowman* and *Stafford & Arthur,* for proponents.

GEIGER, J.

On June 23, 1909, a paper writing purporting to be the last will and testament of Joseph O. Leffel, was offered for probate in this court. The will is dated May 5, 1909, and is signed by the said decedent, Joseph O. Leffel, at the end thereof and is attested by two witnesses, Louis Foster and J. C. Kester, and the will in all its formal parts is in conformity to law.

The question as to whether or not it should be probated, arises upon the facts brought out in the testimony of the two subscribing witnesses, and the witness J. C. Miranda, who was present at the time the paper was signed by the testator, before the two subscribing witnesses came into the testator's presence, and was there at the time the testator made such acknowledgement of the

paper as was testified to by the witnesses, and at the time the two subscribing witnesses affixed their signatures.

The following facts seem to be undisputed by, the testimony:

That the paper was drawn up by J. C. Miranda on the day it was signed by Joseph O. Leffel, to-wit, May 5, 1909. That Joseph O. Leffel signed the same in the presence of Miranda. That at the request of Joseph O. Leffel, Miranda went out of the room to the barn to secure the presence of Kester and Foster. That Miranda told Kester and Foster he wanted them to come into the house to act as witnesses, and that they went into the house with Miranda, and that there Mr. Leffel acknowledged, in the presence and hearing of the witnesses, that the *signature* to the paper was his *signature*, and that thereupon the witnesses signed the paper as witnesses in the presence of Mr. Leffel and at his request. That Mr. Leffel was of sound mind and memory, and not under any restraint.

The sole point of discussion as to this will arises on the testimony of the witnesses subscribing the will, as to whether or not Mr. Leffel acknowledged his signature to be his signature to his "will," and upon this point the evidence differs.

The witness Kester, in an uncertain and rather unsatisfactory manner, testifies that when the three were in the room with the testator, the testator sitting at a small table, Miranda standing at his right, and the witness Kester being on the opposite side of the table from the testator, and the witness Foster being somewhat in the rear of the party, Miranda picked up the paper and showed it to the testator and said, "this is Joe's will, and he wants you to sign it," and he said to Joe, "this is your signature on it?" and Joe said, "yes, it is," and that the testator heard what Miranda said.

The witness Kester varied in this statement under examination and cross-examination, but the conclusion from his testimony is that when Mr. Miranda picked up the paper and showed it to the testator, that the witness Kester heard the testator acknowledge that his signature was his signature to his *will*.

The witness Foster is clear and positive that he did not hear the word "will" used, either by Mr. Miranda or Mr. Leffel. That when the paper was picked up and extended to Mr. Leffel, Mr. Leffel acknowledged that it was his signature, and that the wit-

ness did not hear the word "will" mentioned, and that he walked into the corner of the room and remained a few moments, and came back, and Mr. Miranda asked him in the presence of Mr. Leffel if he recognized Mr. Leffel's handwriting, and the witness said he did, and that Miranda then asked Mr. Leffel if it was his signature, and Mr. Leffel said it was, and the witness put his name to the paper as a witness to the signature.

The witness testifies that at the time the will was shown to Mr. Leffel, he was about seven feet away from the table at which Mr. Leffel was seated.

He would not testify that Mr. Miranda did not use the word "will" in the hearing of Mr. Leffel, but he testifies he did not hear him use said word; he testifies that he imagined it was a will from its general appearance, that he saw it was made up of writing and printed matter, but had no idea from Mr. Leffel that it was his will.

Mr. Miranda testifies in substance, that he went to the barn and asked the two witnesses to come in and witness Mr. Leffel's signature to his will, and that when the three came into the room, Mr. Leffel and Kester said a few words together and that Mr. Miranda turned the paper lying on the table and said to Mr. Leffel, "these men will witness this *will*. Do you want these men to witness your *will*," and Mr. Leffel said, "yes," and Mr. Miranda said, "you wrote your name to this *will*," and he said he did, and the witnesses signed it in his presence and in the presence of each other and in the presence of Mr. Miranda.

Section 5916, Rev. Stat., provides how a will shall be made, and that such will shall be signed at the end thereof by the party making the same, or by some other person in his presence and at his express direction, and shall be attested and subscribed in the presence of such party by two or more competent witnesses, who saw the testator subscribe or heard him acknowledge the same.

Publication or a formal declaration of a will by a testator is only necessary when expressly required by the statute, and our statute requires none.  30 Am. & Eng. Enc. Law, 587.

Attesting is an act of the witness and not of the testator and has nothing to do with the acknowledgement by the testator. 3 Am. & Eng. Enc. Law, 273; 30 Am. & Eng. Enc. Law, 587.

Were there no decisions upon this statute, the court would without hesitation say that a plain reading of the statute means that the two witnesses shall subscribe the will in the presence of the testator; that these two witnesses shall have either seen the testator subscribe the will or heard him acknowledge the subscription of the will, or heard him acknowledge that the instrument, as signed, is his own act.

It would seem to be plain that if the two witnesses saw the testator subscribe the paper, and then in his presence attested and subscribed it as witnesses, that that would be a sufficient execution of the will.

There is nothing in the statute which seems to indicate that the testator in subscribing the will in the presence of the witnesses, should make any acknowledgment to the witnesses of any fact at all. There is no requirement that when the witnesses see the testator subscribe his name that they must hear him acknowledge either that it is his will or that the signature which they see placed to the will, is his signature, or that the signing is his act. An acknowledgement by the testator that his signature, made in the presence of the witnesses, is his signature, would be idle, because the witnesses have seen with their own eyes it is his signature, and under the statute it is no concern of the witnesses whether the paper be a will or not.

In the event the testator has not subscribed the will within the actual vision of the subscribing witnesses, then, by the statute, the witnesses in lieu of having seen him sign it, must have heard him acknowledge the same.

In view of the fact that if the witnesses saw the testator sign, there need be no acknowledgment of any kind—the only reasonable construction to be put upon the phrase "or heard him acknowledge same," is that the witnesses must hear him acknowledge his signature, they not having seen him write it, or that the instrument as signed is his own act.

If this be the proper view of this statute, then clearly this will was properly executed, because while it was not signed in the presence of the witnesses there is no dispute as to the fact that the signature was acknowledged by Mr. Leffel to be his signature. But unfortunately there have been a number of deci-

s'ons of the Supreme Court which seem to throw a cloud about that which would otherwise be clear.

The first case called to the court's attention is *Raudebaugh* v. *Shelley*, 6 Ohio St., 307.

The syllabus of this case is:

"Where an attesting witness to a will did'not see the testator subscribe his name to the instrument, the acknowledgment of the fact by the testator in the hearing of the witness, which is requisite, is not required to be made in any particular words or any specified manner; but if, by signs, motion, conduct, or attending circumstances, the attesting witness is given to understand by the testator that he had already subscribed the paper as his will, it is a sufficient acknowledgment."

In the first part of this paragraph the court says that the acknowledgment of the fact by the testator is not required to be in any particular words. Acknowledgment of what fact? The fact referred to is the subscription of the name to the instrument, and not the fact that the instrument is a will; but in the latter part of this paragraph it says that if the attesting witness is given to understand by the testator that he had already subscribed the paper "as his will," it is sufficient.

If the meaning of the court is that the testator should give the witnesses to understand that he had subscribed the paper with his name, without inserting the words, "as his will," then this portion of the paragraph would be in keeping with the first part of the paragraph and with the statute.

The court, in *Raudebaugh* v. *Shelley, supra,* was passing upon a certain state of facts, which appear from the case, and upon the charge of the court upon such facts. There were two witnesses to this will, one Espick and one Stentz, and the question arose as to the witness Espick.

On page 310 of the report, as to the witness Stentz, it is stated that at the time it was attested by Stentz the old man expressly declared the signature to the will to be his, in words audibly spoken. It also appeared in evidence that the witness Stentz signed his name as a witness to the will in the presence of the testator and at his request.

No question is raised as to the validity of the attestation of Stentz, and there is nothing shown in the report that Stentz

heard the testator acknowledge the paper to be his will; all that the statement shows as to Stentz is that the old man declared the signature of the will to be his, in words audibly spoken.

As to the witness, Espick, the only testimony seems to be set out on page 309 of the report, and the witness asked the testator if the paper given to him was the writing he wanted him to witness, and the old man replied that it was, and either the old man or his son, directed him where to sign his name. There was nothing further said about the paper by anybody.

On page 311, is the charge of the court which is under review, in which the court charges that the jury might judge from the whole transaction, as it was detailed to them in evidence, whether it was the intention of the old man to admit to the witness that the instrument or writing which he was called to attest was executed by him and was his act, and whether by what was said and done he carried out that intention; that in this case, "if the testator having duly signed the will in the absence of the witness, subsequently, for the purpose of having it attested, produced it to the witness Espick, with his own signature actually exposed to the view of the witness, and requested him to sign the 'writing,' as a witness, such conduct and request would constitute under our statute a sufficient acknowledgment to that witness of the execution of the will by the testator."

This part of the charge is preceded by the statement that it was not necessary that the proof should show that the testator, in so many words, said that the signature was his, or that the writing was his will, but the part of the charge first quoted stands alone and the whole is clearly to the effect that the testator need not acknowledge the writing to be his will.

The court, on page 314, gives three requisites to the execution of a will. The third is that the witness should have either seen the testator subscribe the paper or heard him acknowledge the same.

In lieu of having seen the testator subscribe the paper, they must hear him acknowledge the same—that is, the paper or the signature, and it is not necessary under that statement that they should hear him acknowledge the paper *as his will*.

On page 315, the court says:

"It was not essential to the attestation that the witnesses should have been made acquainted with the particular contents of the instrument. Where an attesting witness does not see the testator subscribe his name to the will, the law requires that he should hear the testator acknowledge the fact of his having subscribed it. This acknowledgment is not required to be made in any particular words, or in any particular manner."

Thus far the decision is clear that the thing to be acknowledged is the signature, or the signing of the instrument, but the court says if by signs, motions, etc., the attesting witness was given to understand that the testator had already subscribed the paper "as his will," it was a sufficient acknowledgment. Whether he had put his signature to the paper as his will was a question for the jury.

The insertion of the phrase by the court, "as his will" is not called for by the decision, and is not in keeping with the former statements of the court, or the charge of the court under review.

It will be seen by an examination of this case that the phrase "as his will," has crept into both the syllabus and the statement of the court without there being any necessity for the use of such a phrase, and this case would not be authority for requiring that the paper be acknowledged "as his will."

In the case of *Haynes* v. *Haynes*, 33 Ohio St., page 598, the first paragraph of the syllabus holds that if the attesting witnesses are given to understand by the testator that he acknowledges the signature to be his and the instrument itself as his will, it is sufficient.

The court on page 614, says:

"That, if a will is subscribed by the testator, or for him by another, in his presence and by his express direction but in the absence of the attesting witnesses, the will, and the subscription to the same, must be acknowledged by the testator to the attesting witnesses."

The court does not say the paper must be acknowledged as a will, but the paper which is the will must be acknowledged by the testator as the paper signed by him.

The second conclusion of the court, on page 615 only requires that the testator give the witnesses to understand that the signa-

ture and the will were his, and not necessarily that the witnesses are to understand that the paper is a will.

The study of this case leaves the reader in doubt ,whether the decision necessarily requires the publication of the paper "as a will," although the court distinctly states on page 614 that the "testator must, in some way, acknowledge and publish the paper as his will."

A case that is more difficult to be reconciled with the statute is that of *Keyl* v. *Feuchter*, 56 Ohio St., 424, in which the syllabus is:

"One essential to the admission of a paper purporting to be a will to probate is that it shall have been acknowledged by the maker as his will, and his signature also acknowledged, in the presence of the two subscribing witnesses."

In reading the testimony of the one witness, as set out in the report it is clear that he did not either see the signature to the will or hear the signature acknowledged, or hear the paper acknowledged as a will, and these things must be taken into consideration in attempting to understand this case.

In this case one of the subscribing witnesses having deceased, his signature was duly proven. This had the effect, in law, of proof that the purported will had been duly acknowledged in the presence of that witness.

The court, on page 432, says:

"By the testimony of the other witness, it was shown affirmatively that the alleged will was not executed and acknowledged in accordance with the statute, in that there was no acknowledgment by the maker, either of the paper as his will, or of his signature thereto, in the presence of that subscribing witness."

It is easy to reconcile this language with the statute, but not with the syllabus of the case. The court says there was no acknowledgment either of the paper as his will, which would have been sufficient in itself, or of his signature thereto, which would have been sufficient in itself.

The case of *Missionary Soc. of M. E. Church* v. *Ely*, 42 Bull., 273, the first witness did not see the signature of testator or hear him acknowledge anything. The second witness was asked by testator to witness his signature and saw the signature. The

facts are not the same as the case at bar and this decision does not apply.

Reviewing these authorities the court comes reluctantly to the conclusion that, by virtue of the authorities cited reviewing the statute in question, it is probably necessary for the testator, who signs his will out of the presence of the witnesses, to acknowledge his signature to he his signature *"to his will."*

This court does not believe this is a requirement of the statute, but feels that when this question is directly placed before the Supreme Court, *Keyl* v. *Feuchter, supra,* will be so distinguished that the acknowledgment by the testator of the paper *as his will,* will not be required; but merely the acknowledgment of his signature, or the acknowledgment that the paper is an instrument signed by him. But at present we must be governed by what is said by the Supreme Court in *Keyl* v. *Feuchter, supra,* and in *Haynes* v. *Haynes, supra.*

There is no doubt but that Mr. Leffel intended this paper to be his will, but if it is not executed in compliance with the statute, no matter what his intent may have been, it is not a valid will.

*Irwin* v. *Jacques,* 71 Ohio St., 395, holds that the doctrine seems to be that as to the manner of the execution of a will, the courts look to the intention of the Legislature and not the intention of the testator. This is directly decided in *Sears* v. *Sears,* 77 Ohio St., 104.

Section 5296, Revised Statutes, provides that the court shall cause the witnesses to such will and such other witnesses as any person interested in having the same admitted to probate, may desire, to go before said court, and such witnesses shall be examined in open court, and their testimony reduced to writing and filed.

Section 5929, Revised Statutes, provides that if it shall appear that such will was duly attested and executed, and that the testator at the time of executing the same was of full age, and sound mind and memory and not under any restraint, the court shall admit the will to probate.

It is therefore not necessary that the court rely upon the testimony of the two witnesses who have signed the will. The

testimony of Kester is fairly satisfactory that the paper was acknowledged in his presence to be the will of Mr. Leffel.

The testimony of Mr. Miranda is clear upon this point, that it was so acknowledged as a will.

*Haynes* v. *Haynes, supra,* it is held that:

"While the due execution of a will can not be assumed in the face of positive evidence to the contrary, merely because it has been signed and attested in due form, yet mere failure of the attesting witnesses, or their denial of the facts, will not defeat it if it can be established by other evidence."

See *Carpenter* v. *Denoon,* 29 Ohio St., 379, 391.

The witness, Foster, merely testifies that he did not hear the word "will" used; one of the other witnesses testifies positively that he did hear the word "will" used, viz., Mr. Miranda.

Mr. Kester, while not speaking with such a degree of certainty as might be desired yet convinces the court that he did hear the word "will" used.

The solemn act of the testator should not be put in jeopardy by the carelessness of a witness.

Mr. Foster was there for the purpose of hearing a paper acknowledged; he states that he supposed it was a will; that he did not hear the word "will" used, yet he was within seven feet of the table upon which the paper was lying, and at which the word "will" was spoken in the presence of the testator.

No reflection is intended to be made upon the witness Foster, as to his integrity or desire to give a proper account of what transpired, but there certainly is a presumption in favor of the fact that the will was acknowledged as a will in the hearing of Mr. Foster, as testified to by the other two witnesses, and his testimony that he does not remember the word "will" being used, should not be sufficient to overcome the presumption that the execution of the will was carried out in the usual manner, as provided by law.

The court can not escape the conclusion that the will was properly executed, and the probate will be allowed.