Price, J.
The plaintiffs in error are the children and heirs at law of Elizabeth Webster, who died in the year 1872 seized in fee'simple of the lands involved in this proceeding. Alfred Webster, her husband, survived her, and under the statute then in operation, he became a tenant for life by curtesy in the entire premises. Pie died in the year 1892 and his life estate terminated. It was then that these heirs came into their own, and were entitled to enter upon and take possession of the estate in fee. Until the termination of the life estate no right of entry existed in the heirs, for the tenant by curtesy was entitled to possession and full control of the premises, barring ■ waste and other acts which might work a forfeiture of his estate, and the general rule is, that no cause of action accrues to the remainderman until the death of the life tenant, or other termination of the precedent *94 particular estate, and as a right of immediate possession is an indispensable requisite to maintaining an action of ejectment, it follows that-suit cannot be brought by the owner of the remainder so long as the precedent estate exists.
This rule is recognized in Holt et al. v. Lamb et al., 17 Ohio St., 374; Carpenter v. Denoon et al., 29 Ohio St., 379; Koltenbrock v. Cracraft, 36 Ohio St., 584. This doctrine becomes important in this case, because when the heirs gained the right of entry by • the death of their father, the life tenant, the railroad company was in possession of that part of the lands now in controversy with a railroad fully constructed and in operation thereover, and its possession began in the year 1882, ten years before the termination of the life estate, and has been continuous since that to the present time. It did not obtain possession by appropriation proceedings under the statute, nor does it claim it by virtue of any contract with the life tenant or any of the remaindermen. The proceeding now under review was commenced in the probate court on the 16th day of August, 1904, about twelve years after the death of the tenant by curtesy, and hence the' period of the statute of limitations against an action of ejectment by the heirs has not run.
It follows, that until the period has fully run, the railroad company has been and is now wrongfully in possession. The only color of title asserted aside from the statute of limitations, is title acquired under a void tax sale, under which it is not now claimed the company holds any valid title. The tax title, according to the pleadings, *95 resulted from the delinquency of the life tenant in not paying the taxes charged against the premises, — a duty made incumbent on him by the statute, and such delinquency did not forfeit the estate of the remaindermen. See the cases above cited. Other substantial facts preceded and attended the tax sale which made the sale invalid, and as no reliance is now placed upon it, we will not pursue that subject further.
That out of the way, we see that the railroad company had no title when it took possession, and had none when the action was commenced in the probate court as against the heirs, for not until the last hour of the twenty-one years of limitation has run, could a plea of such statute defeat a recovery by them in an action of ejectment. The execution of the judgment against an established railroad is for later consideration.
But it is said the case under consideration is not an action of ejectment, but one under Section 6448, Revised Statutes, to compel appropriation by the company, and such is the character of the suit. With this assertion goes the statement, that the heirs though out of possession and also out of any right of possession until the death of the life tenant, could have instituted the suit under consideration at any time after the railroad company wrongfully took possession in 1882, and therefore the statute of limitations had fully run when the present action was commenced — August 16, 1904. This position means, that if the heirs had brought ejectment, the plea of the statute would not be good, but if they elected to resort to the remedy afforded by Section 6448, supra, *96 the statute applies. It is further argued, that the remaindermen could have enjoined the railroad company from constructing its road on the premises just as they could have enjoined cutting timber or otherwise committing waste by the life tenant or a stranger. We cannot assent to the broad statement. Circumstances might have existed and the situation of the parties might have been such that a court would decline to enjoin. The life tenant may have colluded with the railroad company so that it gained possession. But injunction is a preventive remedy and its omission does not waive or condone the trespass when committed. It is not good argument here to say that because the heirs were silent and did not endeavor to prevent the company from taking possession and building the road, that they have lost their estate or right to reclaim it. Authorities hereafter cited or quoted refute the proposition.
And as to the other point, that they could have brought suit to compel appropriation under Section 6448, without waiting the termination of the life estate, we remark, that strictly speaking, the possession of the railroad company was not adverse to the heirs, but adverse to the life tenant while he lived.
Besides, it is said that the remedy provided by this section of the statute is a substitute for the right to recover possession and should be governed by the bar allowed in ejectment. Railroad Co. v. O’Harra, 48 Ohio St., 353. The heirs being out of possession, owned not the fee, but the fee in remainder. They were not required to procure the joinder of the life tenant in a suit to compel *97 appropriation. As before stated, the life tenant may have sold his permission of possession to the railroad company; or he may have colluded with it in some manner whereby it took possession. Without the united action of tenant and the heirs, the questions of appropriation could not have been fully settled. No obligation rested upon the heirs to convert the life tenant into a co-plaintiff in an action under the statute. They could rely on enforcing their rights when the door should be fully open for their relief.
It is said by Warvelle in his work on Ejectment, Section 452: “As a’ general rule of uniform observance, no possession of lands can be deemed ■ adverse to a party who has not, at the time, a right of entry and possession. For this reason a disseizin of a life tenant, or the owner of any particular estate, has no effect upon rights held in remainder or reversion. Such disseizin imposes no obligation upon the remainderman or reversioner to enter, nor will the statute commence to run against them until the termination of the particular estate, no matter how long the tenant thereof -may have been disseized.” The author cites Devyr v. Schaefer et al., 55 N. Y., 446; Orthwein v. Thomas, 127 Ill., 554; Wallingford v. Hearl, 15 Mass., 471; Jackson v. Johnson, 5 Cowen (N. Y.), 96; Sand v. Church, 152 N. Y., 174. In a note on p. 506 of Warvelle on Ejectment is an illustration and summary of Orthwein v. Thomas, supra, as follows: “Thus, children inheriting land from their mother, subject to their father’s rights as tenant by the curtesy, are not guilty of laches in remaining silent for more *98 than thirty years, during which time their father was alive, and he and his grantees laid out and platted a town on such land and were in possession thereof; for such possession was lawful and consistent with the father’s estate, and neither the children nor the grantees had any right to disturb it.”
The railroad company was not disposed to move in proceedings to gain title and possession, and can it be heard to say that because the heirs kept silent until after the death of the life tenant, it will add the years of the life tenancy after the wrongful entry to the years since its termination in order to defeat the present remedy? Again we say, the possession of the company during the life tenancy was adverse to the tenant rather than to the remaindermen, and the time should not be so computed,' and it is of the very life of the statutory bar that the possession by the railroad company was, for twenty-one years next before suit, continuously and openly, adverse to the heirs. Such possession may have been open, notorious and continuous for the statutory period, yet if it was not also adverse, it availeth nothing. This is the counterpart of the first proposition discussed, namely, that the heirs not having a right of entry during the existence of the life estate, could not have brought ejectment against the company during that period.
We will reinforce the second proposition by noticing what was decided in the foregoing cases. In Jackson v. Johnson, 5 Cowen, 75, it is held, “that the statute of limitations does not run ^against remaindermen or reversioners, during the *99 continuance of the particular estate. It was aimed at those guilty of laches in omitting to enter, or bring actions, which cannot be said of remaindermen or reversioners, who have no right in law to do either.” In Wallingford v. Hearl, supra, the following is stated as the law of the case by Parker, C. J.: “The demandant’s right of entry accrued on the death of the tenant for life, and he had twenty years by the statute to preserve his estate by entry. He entered in fact within one year after his title accrued, that is after the termination of the life estate. It is said that he might have entered before in consequence of the disseizin of the tenant for life. If he might, the la^y imposed no obligation upon him to do so. He might be utterly ignorant of the disseizin, notwithstanding the visible occupation of the disseizor, for he might well suppose that the tenant had entered into a contract with her, who was seized of the freehold. It is settled in 'the case of Wells v. Prince, 9 Mass., 508, that although the reversioner may enter before the death of the tenant for life, if she refuse to enter, yet that he may waive that right, and enter after her death * *
In Devyr v. Schaefer et al., supra, it is held on page 446: “No possession can be deemed adverse to a party who has- not at the time the right of entry and possession.” In Orthwein v. Thomas et al., supra, p. 555, it is held that, “until the death of the life tenant, no statute of limitations will begin to run against the remainderman, and laches will be imputed to him only from the time his right of entry accrues.” A like principle is laid down in Sand v. Church, supra. See also Borders *100 v. Hodges, 154 Ill., 498. See also Carpenter v. Denoon et al., 29 Ohio St., 379. These are authorities selected from many others of similar import which, as we think, establish the proposition that the possession of the railroad company did not become adverse to the rights and title of the plaintiffs in error until the death of the life tenant, their father, and that not until that time did. the statute of limitations begin to run against them; and we think that this rule must apply to the proceedings under review.
We may look at this case from another viewpoint. The railroad company took possession without contract and without appropriation. It is not claimed here that any owner of the estate even consented to the possession, and the company gained no advantage by the mere silence of the owners. It is said in Railroad Co. v. Perkins, 49 Ohio St., 330, that “a man does not acquiesce in law by merely neglecting to assert his rights. No acquiescence in this sense affects his right of-action short of the period prescribed for its commencement.” And again, on page 332, it is said, “it 'is a mistake to say that by the wrongful entry of the company the right of the owner to his land is turned into a mere chose in action for the value of it.” The only obstacle to the remedy by ejectment lies in the efficacy of the ejectment writ, and not a denial of the right to its enforcement. In many, perhaps in most cases where railroad companies have constructed their railroads on lands of another without right, their occupation and the work constructed on the premises may be such that, while the company may *101 be ejected, it would leave its property behind to plague the landowner. Besides, the interruption of public travel and business would be a serious consideration in ordering an ouster. So we have the provisions of Sections 6448 and 6449, Revised Statutes. The last clause of the latter section expressly provides, “this section shall not be construed to impair or lessen in any manner the right of the owner or owners * * * may have to proceed against the corporation as in all other cases of the unlawful entry upon lands.” Therefore, where the writ of ejectment may be impracticable for reasons above given, or others sufficient, the owner may select the remedy under the above .statute, as has been done in this case. And this court has held in Railroad Co. v. O’Harr a, 48 Ohio St., 343, that proceedings to compel appropriation are not barred by lapse of less than twenty-one years from the time of such occupation' by the company. The period is not thus limited as against one who is a remainderman or a reversioner and has no right of entry or possession during the existence of a life estate. As already stated, as to such remaindermen or reversioners, the statute does' not start until the termination of the particular estate. On page 353 of above case, Minshall, J., says: “The remedy in such case is a substitute for an action to recover the possession, and we fail to perceive why it should be barred in any shorter period than an action for that purpose * * * .”
In Fries v. Railway Co., 56 Ohio St., 135, the same rule as to the .statutory bar is again asserted, as to proceedings to compel appropriation, and *102 what we have said as to when the statute begins to run is here applicable also. These and other Ohio cases are not in conflict with the views expressed in this case, but are entirely consistent therewith.
There is another point raised by defendant in error. It is provided in Section 6448, supra, “such owner or owners or either of them * * * may serve notice in writing upon the corporation in the manner provided for the service of summons against a corporation, to proceed under this chapter to appropriate the lands, and on failure of such corporation for ten days so to proceed, said owner or owners * * * may file a petition in the probate court of the proper county setting forth the fact of such use or occupation by the corporation, that the corporation has no right, legal or equitable thereto * * * that the 'notice provided in this section has been duly served; that the limitation under the notice has elapsed, and such other facts,” etc. The petition contained all these statutory facts, but it is claimed that the plaintiffs failed to prove the service of the notice preliminary to filing their petition. The printed record is silent upon the subject. The notice, if one was served, is not brought into'the record before us, and it is argued that having failed to show the service of such notice the plaintiffs failed to make a case under the statute. Before deciding the question, it is well to see what the answer contains. The railroad company admits that it is a railroad corporation authorized to make appropriation of private property, and that it is in possession of the premises indicated, *103 and avers that “it has been in open, notorious, continuous and adverse possession of said part of said lots, under a claim of right and title, for more than twenty-one years prior to the beginning of the above entitled action; admits that it has been operating a line of railroad over that part of said lots in its possession as aforesaid.”
The answer then proceeds to deny “each and every statement, allegation and averment in said amended petition contained, not herein expressly admitted to be true, and says that the same are false and untrue.”
Next, the company sets out in detail that the premises were sold at delinquent tax sale in January, 1879, and that in due time a deed was made to the purchaser for the lands so sold, and that the company holds under said tax deed, and in connection therewith again pleads the statute of limitations. The reply attacks the validity of the tax deed.
We do not believe that the failure to prove the service of the notice deprived the court of jurisdiction to proceed with the case, after the above issues had been joined. The point was not raised, as we can discover, at any stage of the trial.' When the plaintiffs rested their case, no mention was made of the absence of such proof, and the company proceeded and put in its evidence. The attention of neither court nor counsel was called to the absence of proof of the notice after the defendant rested. Nor was the court requested to instruct the jury upon the subject, and we think the point is too late in arrival to justify a reversal of the judgment of the probate court *104 on that ground; Neither the circuit court nor the court of common pleas seems to have spoken or ruled on that question.
We conclude that the judgments of the circuit and common pleas courts should be and they are reversed; and the judgment of the probate court is affirmed.

Judgment reversed.

Shauck, C. J., Summers and Spear JJ., concur.